Dillon, J.
A written agreement was made on September 9, 1885, by virtue of which the defendant received the exclusive right, permission and license to enter upon, mine and remove the coal from a tract of land in Athens county, Ohio. The defendant therein agreed to mine the coal on these premises and to take it therefrom and pay a royalty on not less than fifty thousand tons of coal in each and every year thereafter, and to continue to mine and to pay royalty until all the coal that could be practically mined on the said premises should be so mined and paid for. The defendant further bound itself to conduct such mining operations in a good and workmanlike manner, so that all the coal that could be practically mined should be mined and paid for. The defendant further agreed to pay the sum of ten cents per ton for all lump coal so mined.
*425 The contract further provides and declares the intention of the parties to be that such monthly payments under this contract shall be in an amount of at least $416.67, and that this payment shall be made regularly ‘ ‘ whether the monthly proportion of coal on the basis of fifty thousand tons per annum shall have been mined or not, and that, any payment so made in advance of coal actually mined, shall be applied as royalty on the coal which may be thereafter mined in excess of the minimum amount herein provided for. ’ ’
A provision is further made that if the defendant shall fail or neglect for a period of thirty days to make such monthly payment the lease may at the option of the first party, but not otherwise, be declared forfeited and the owner of the property restored to his exclusive possession and ownership of the premises.
A provision is further made that in ease mining operations shall be temporarily interrupted' by strikes, or means or agencies beyond its control, the obligation to pay during such time shall not be enforced, but “that save and except the period or periods during which the second party may be interrupted as aforesaid, the second party shall be deemed to be liable for the payment to the first party or his successor in said trust, the amount of royalty which would be due under the terms of this contract in respect to coal mined each month the same as if said coal had actually been mined. ”
The contract further provides that “when the second party shall have mined and paid for all the coal that can be practically mined on the premises hereby demised, and shall have fully performed all the covenants herein stipulated by it to be performed, the second party shall be permitted to remove from said premises its tracks and fixtures. ’ ’
The petition alleges that no monthly payments have been made since May, 1904, and asks for a judgment against the defendant for $2,083.33 and interest.
The answer admits the agreement, but says that up to and including the said month of May, 1904, it has paid to the plaintiff in all the sum of $93,331.96 in monthly payments of $416.66 each; but that up to said time the defendant has mined and re *426 moved from said premises only 734,325.91 tons of coal, and that under the royalty provided in said agreement, to-wit, ten cents a ton, the amount due and payable for the coal actually mined and removed would be $73,432.59. In other words that the defendant has now paid to the plaintiff the sum of $19,898.37 more than the royalty at the rate of ten cents per ton would amount to.
The defendant further says that there is now remaining in this tract of land yet to be mined 198,570 tons of lump coal and no more, and that the royalty upon this coal when it has been mined will amount to $19,857; that therefore the defendant having already advanced the payment in the sum of $19,898.37, it will have paid to the plaintiff $41.37 more than the royalty of ten cents per ton will amount to, and that it is, therefore, entitled to mine all the rest of the coal in this land without paying any further royalty.
The demurrer to this answer calls for an interpretation of this contract.
In the case of Raynolds v. Hanna, 55th Fed., 783, in construing a will wherein this identical lease was involved, the court (Jackson, J.) held that, in so far as the question arose as to the construction of the will and as to what source to credit the amounts arising therefrom, this agreement was a lease, and that the funds arising thereunder were a part of the income of the estate and should be so distributed and accounted for.
The question presented to this court was not presented to that court nor was it intended by the use of the word ‘ ‘ lease ’ ’ to involve the question raised here. It must be at once apparent, and it will dispense with considerable argument, to say that no particular nomenclature or set phrases are necessary to be used in order to determine the nature of this contract. Even the use of technical words or phrases in an agreement will not be allowed to defeat" the manifest intention of the parties as expressed in the instrument, and, therefore, such words as “demise,” “release,” “mine-let,” and “royalty,” etc., as used by the parties will not of themselves be sufficient to defeat or modify the agreement which the parties have by the words used actually made. *427 The question before this court is: What does this contract mean ?
In one sense it was a sale, for it is apparent that the moment the coal was actually mined the title passed from the owner of the land to the defendant in this case.
The plaintiff’s contention is that these royalties of ten cents a ton were in fact rentals and no more; that the instrument in question is a lease and is not a sale of property. The contention of the defendant is that this agreement, considered in its entirety, is strictly a royalty contract, and that the intention of the parties as shown by this agreement was to limit the payment from the defendant to the owners of this property to the rate of ten cents per ton for the coal actually in the land and no more, and that having paid that amount of royalty they are now released from any further payments.
Probably the most important clause of this contract is the one quoted above where it is expressly declared to be the intention of the parties that a payment of $416.67 shall be made each-month, whether the monthly proportion of coal shall have been mined or not. If we stop at this point to analyze the contract, it would be evident in the absence of any other provisions that the contention of the defendant here could not prevail, because up to this point it is apparent that the amount to be paid should-be $416.67 whether they mined any coal or hot, and the provision of ten cents per ton was simply a favor to the defendant and is a limit beyond which the owner of the property could not demand. The clause so far would show that not only was one of the considerations -of this contract definitely fixed as to guarantee and secure to the -owner of the premises a speedy and diligent mining of the coal, but the parties themselves agree that -however small an amount of coal may be mined the value of this property under this, contract shall be in the sum of $416.67 per month subject only to the limitation which follows.
And at this point, we see the parties preparing for a condition which might exist, to-wit, that in the ordinary conduct of the business there might be -occasions when the defendant would mine only -half that amount of coal—that is to say that while they would be compelled to- pay $416.67 as a matter of fact, they *428 might only mine a less amount of coal than was their privilege for said sum. To provide for any such natural fluctuation the clause continues that “any payment so made in advance of coal actually mined shall be applied.” How? To one exclusive source, to-wit: “On the coal which may be thereafter mined in excess of the minimum amount herein provided for.” This contract therefore means that the rate of' ten cents per ton of coal was not an exclusive rate that they were to pay, but that in case they did not mine the coal fast enough the rate should be higher, and this was the penalty expressly provided for in case they operated the mines slower than provided for.
W. 0. Henderson, for plaintiff.
Ouihwaite, Linn & Thurman, for defendant.
It is claimed that this construction of the contract will be unconscionable and will result in compelling the defendant to pay to the plaintiff a larger sum than ten cents per ton royalty.
To the last part of this contention the court must agree, but that it would be unconscionable the court can not agree, because the parties themselves have expressly provided that under certain conditions the “royalty” or payment will as a matter of fact exceed ten cents per ton for all the coal actually mined; by the contract itself the parties have provided for only one place to which the surplus money may be applied and that is to the coal which is thereafter mined “in excess of the minimum amount herein provided for. ’ ’
The case of Tod v. Siumbaugh, 37th Ohio State, 469, is quite in point, although the decision dicussing the subject matter is very brief.
The conclusion, therefore, to which this court has come is that the demurrer to the answer is sustained.
If the defendant does not desire to further plead a final judgment will be entered; otherwise ten days given in which to amend. Exceptions will be noted.